**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3602-24

JOHN LOUGHREY,

     Plaintiff-Appellant,

v.

COUNTY OF MONMOUTH,
TERI O'CONNOR, Monmouth
County Administrator, and
MICHAEL D. FITZGERALD,
Monmouth County Counsel,

     Defendants-Respondents.

_____

        Argued June 3, 2026 – Decided August 5, 2026

        Before Judges Gooden Brown, Rose and Torregrossa-O'Connor.

        On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1670-24.

        John Loughrey, appellant, argued the cause on appellant's behalf.

        Russell Macnow argued the cause for respondents (Russell Macnow, LLC, attorneys; Russell Macnow, on the brief).

PER CURIAM

Plaintiff John Loughrey appeals from the May 30, 2025 Law Division order granting summary judgment in favor of defendants Monmouth County (the County), Monmouth County Administrator Teri O'Connor, and Monmouth County Counsel Michael D. Fitzgerald (collectively, defendants), thereby dismissing plaintiff's complaint alleging breach of contract against defendants for denying plaintiff lifetime no-cost health benefits, and the July 3, 2025 order denying reconsideration and recusal.[1] He also challenges the trial court's finding that certain communications between O'Connor and Fitzgerald were privileged and therefore not discoverable.

On de novo review, we consider whether, within the meaning of a controlling Monmouth County resolution governing employee health benefits

---

[1] Although we recognize plaintiff's notice of appeal indicates he challenges the court's denial of his motions for reconsideration and recusal, plaintiff's merits brief contains no arguments specifically related to the motions and notes only that "the issues from [the reconsideration and recusal] hearing are not the subject of this appeal." See Midland Funding, LLC v. Thiel, 446 N.J. Super. 537, 542 n.1 (App. Div. 2016) (when appellant's notice of appeal lists issues later "not briefed on appeal," the Appellate Division "considers [the] appeal from those [issues] abandoned . . . [and] waived"). Consequently, and because we determine the trial court properly granted summary judgment in defendants' favor, we need not further address the reconsideration or recusal decisions, as plaintiff conceded he abandoned on appeal any additional challenges to the reconsideration and recusal decision.

upon retirement, see Monmouth County, N.J., Bd. of Chosen Freeholders Res. 94-267 (Apr. 14, 1994),[2] plaintiff, a retired assistant county prosecutor, was "hired" before July 1, 1994—the cutoff date for eligibility for lifetime no-cost health benefits. The trial court found plaintiff was not "hired" when he accepted the offer of employment prior to July 1, but instead was "hired" after that date, when he took the oath of office and commenced his employment. Having viewed the record under the controlling resolution, we affirm. We also discern no error in the trial court's decision withholding privileged communications between Fitzgerald as county counsel and O'Connor as county administrator concerning the benefits determination.

I.

We derive the following facts from the summary judgment record, viewed in the light most favorable to plaintiff as the non-moving party. See Friedman v. Martinez, 242 N.J. 450, 472 (2020). Very little is disputed about what occurred and when.

_____

[2] The then-Monmouth County Board of Chosen Freeholders (the Board) is now known as the Monmouth County Board of County Commissioners. For accuracy, we cite to the Board's resolution in accordance with its prior designation.

A-3602-24

Plaintiff retired in February 2022 from the Monmouth County Prosecutor's Office (MCPO) after more than twenty-seven years of service. Formerly a Staten Island assistant district attorney, plaintiff applied to the MCPO in April 1994. After an interview with the county prosecutor in May 1994, he was offered the position.

In a letter dated June 1, 1994 to the former county administrator, the then-MCPO second-assistant prosecutor advised: "[Plaintiff] has accepted the position of assistant prosecutor with the [MCPO and] . . . will be starting in his new position on July 18, 1994." In a memo dated June 2, the county administrator responded to the second assistant, stating: "Authorization is given to hire [plaintiff] effective July 18, 1994." A handwritten note on the copy of the memo provided in plaintiff's appendix states, "6/15 paper wk on its way" and, in parentheses, "new hire letter."

It is undisputed plaintiff was required to complete substantial paperwork, and plaintiff provided an undated checklist of nineteen specific forms, with handwritten checkmarks next to each. A form entitled, "Personnel Action Request Form," dated June 27, 1994, from the MCPO to the "Personnel Department," requested plaintiff be approved to "fill" a particular vacancy as an assistant prosecutor with a requested "effective date" of "July 18, 1994." The

request further projected the "length of time needed" to be "from 7/18/94 to indefinite," at a set salary. The form was stamped "APPROVED" at the bottom, with a handwritten date of "7/1/94" and initials next to the signature of Thomas A. Mion, the MCPO office manager at the time.

Importantly, however, plaintiff's employment was conditioned upon his satisfactorily clearing a mandatory background check and taking the oath of office. Plaintiff took the oath of office on July 18, 1994—his first day of work at MCPO and the date he first became "pension eligible."

Unbeknownst to plaintiff at the time he applied for, accepted, and commenced employment with the MCPO, the County revised its health benefits policy for county employees, eliminating lifetime no-cost health benefits upon retirement for those employees "hired" after July 1, 1994. Specifically, on April 14, 1994, the Board adopted Resolution 94-267 which provided in relevant part:

> BE IT FURTHER RESOLVED that any new employee hired after July 1, 1994 will not, regardless of their years of service anywhere, be allowed to retire from Monmouth County with any health benefits at no cost.
>
> BE IT FURTHER RESOLVED that any employee hired by the County on or after July 1, 1994 will not be permitted to enroll in the County's Self-Funded Indemnity Plan.

A-3602-24

BE IT FURTHER RESOLVED that all active employees hired on or before June 30, 1994 will be able to participate in either the County's Self-Funded Indemnity Plan by having the appropriate deduction made from each paycheck or in the County's Self-Funded Point-of-Service Plan at no cost and that all of these active[] employees may, during their active employment only, choose between the Self-Funded Indemnity Plan and the Self-Funded Point-of-Service Plan each year during the Open Enrollment period only.

[Monmouth County, N.J., Bd. of Chosen Freeholders Res. 94-267 (Apr. 14, 1994).]

Prior to the resolution, the County provided no-cost lifetime health benefits for employees retiring after more than twenty-five years of service.

Years later, in December 2021, when contemplating retirement, plaintiff wrote to O'Connor, as county administrator at that time, requesting he be treated as "hired" as of June 1, 1994, citing the June 1994 letter from the second assistant to the county administrator. In subsequent emails to O'Connor, and to Fitzgerald as then-county counsel, plaintiff reiterated his request for cost-free lifetime benefits, to which O'Connor responded she would meet with Fitzgerald on the subject and advise of the outcome. Thereafter, on January 25, 2022, Fitzgerald notified plaintiff "the County w[ould] NOT be providing health coverage after [his] separation from employment." Fitzgerald explained "hired"

6

under the resolution was "specific to what one might call the 'first day of work'" and "[t]he bright line definition [wa]s needed to avoid any confusion."

Plaintiff thereafter filed a complaint alleging breach of contract. He maintained that his "start date" and "hire date" were two distinct dates and contended he was hired in June 1994, entitling him to no-cost lifetime health benefits. Over the next eight months, the parties exchanged written discovery, and plaintiff was deposed. Pertinent to this appeal, plaintiff requested communications between O'Connor and Fitzgerald regarding plaintiff's benefits inquiry. Defendants withheld the information, asserting attorney-client privilege.

Thereafter, plaintiff moved pursuant to Rule 4:10-2 to compel discovery of the withheld communications, and information concerning other employees who commenced employment after July 1, 1994, but were granted benefits. Defendants cross-moved for summary judgment or, alternatively, for a protective order pursuant to Rule 4:10-3. After writing to the court to advise he could not respond to defendants' motion until the court ruled on the discovery motion, plaintiff also moved for summary judgment and opposed defendants' request for a protective order.

A-3602-24

In seeking summary judgment, plaintiff argued the term "hired" in the applicable resolution should be given its plain meaning, citing Black's Law Dictionary, defining hire as "to arrange for the labor or services of another for stipulated compensation," and Merriam-Webster's Dictionary, defining hire as "to engage the personal services for a set sum." He also noted "in the business world, . . . hiring is the offer and acceptance of . . . the job after negotiations about the job itself." Plaintiff claimed he had been hired as of June 1, 1994, following his acceptance of the employment offer, and the "hire date" preceded the separate and distinct "start date." Although alleging he was unaware of the resolution at the time, plaintiff did not claim any misrepresentations were made to him regarding cost-free lifetime health benefits. He indicated he completed substantial employment-related paperwork prior to July 1, 1994, describing "the hiring process []as well underway . . . throughout the month of June of 1994."

Regarding his discovery motion, plaintiff sought information regarding another former and now-deceased MCPO employee, Barry Graves,[3] whom

---

[3] Graves, an MCPO detective who started on August 1, 1994, received cost-free lifetime health benefits at retirement because he accepted the employment offer before July 1, 1994 "with the understanding that the medical coverage would be afforded to [him]." Graves received these benefits via a settlement agreement in exchange for withdrawal of his lawsuit against the County. The agreement stated, "Graves was hired in May 1994 based upon the express oral

plaintiff contended was similarly situated and received no-cost lifetime health benefits after retirement. He also asserted his entitlement to communications between O'Connor and Fitzgerald, arguing they were "business communication[s,]" not "confidential" attorney-client exchanges.

The court granted plaintiff's request for additional information regarding Graves's receiving benefits, but denied plaintiff's request for communications between O'Connor and Fitzgerald, reasoning, "[Fitzgerald]'s the [C]ounty's attorney" and "[t]hose discussions absolutely are privileged" attorney-client communications. The court reserved decision on the summary judgment motions pending exchange of the Graves-related discovery.

Upon receipt of additional discovery, plaintiff moved to amend his complaint and supplement his summary judgment motion. Plaintiff raised five instances in which county employees, including Graves, received no-cost retirement health benefits despite being hired after the July 1, 1994 cutoff because their "contracts provided for the inclusion of post-retirement health benefits." Defendants cited these employees' unique skills. Indeed, resolutions awarding cost-free lifetime health benefits to the individuals explained the

---

representations by the Prosecutor" and the settlement would "not be precedent setting in any other action or grievance."

County "wishe[d] to attract and hire . . . specific highly qualified individuals from a limited number of available qualified people . . . so that the high level of expertise that currently exists in [a particular] department will be perpetuated" or "so that the high level of expertise that is required for this unique position is not compromised." Besides Graves, exceptions to Resolution 94-267 were made prior to the commencement of employment for two individuals hired for the County's Public Works and Engineering Department in 1997 and one individual hired for the Office on Aging in 1999, who was hired with the understanding he would receive the benefits.[4]

Seeking summary judgment, defendants argued plaintiff was not "hired" before the July 1, 1994 cutoff date, citing his earlier concession "the hiring process was well underway throughout the month of June 1994" as an admission he was only "in the process of being hired" prior to the cutoff date, not actually hired. Defendants contended Graves was provided benefits as an exception to the otherwise clear prohibition in the ordinance and in settlement of pending litigation. Thus, defendants argued the Graves exception was "non-

---

[4]  Additionally, plaintiff cites a fifth employee "appointed [in 1998 as the] Director of Corrections and Youth Services for a term of one . . . year . . . under the terms and conditions outlined in a letter" who allegedly received an "exemption" to the lifetime benefits bar.

precedential," as it was based on "unique circumstances," as were the few other exceptions to the resolution's clear benefits bar for those employed after July 1, 1994. Defendants emphasized plaintiff's hiring, effective July 18, 1994, was "contingent" on completed paperwork, a background check, and an oath of office, without which "[plaintiff] wasn't going to be hired." Plaintiff reiterated he "was hired . . . and then the hiring process . . . continued" until he began employment. He also asserted the resolution lacked a "special circumstances exception."

The court entered a series of orders denying plaintiff's motions for summary judgment and to amend his complaint, and granting defendants' summary judgment motion dismissing his complaint. In its accompanying written statement of reasons, the court summarized the factual background, parties' arguments, summary judgment standard, and statutory interpretation principles, consulting relevant dictionary definitions. In observing Merriam-Webster's Dictionary defines "'hire' as a noun mean[ing] 'payment for labor or personal services' and as a verb mean[ing] 'to engage the personal services of for a set sum,'" the court noted plaintiff "did not begin work at the MCPO until July 18, 1994, and thus was not paid for work that he performed until after that date."

A-3602-24

The court also emphasized plaintiff was "hire[d] effective July 18, 1994." Finding no precedent "comparing the terms 'start date,' 'hire date,' and 'employment date'" across all contexts, the court found it persuasive that plaintiff was required to take an oath of office prior to commencement of his employment, "was free to decide to accept employment elsewhere" before July 18, 1994, and was only entitled to compensation after commencement of employment on July 18. The court likened plaintiff to the plaintiff in Mayer v. Board of Trustees of Public Employees' Retirement System, 479 N.J. Super. 579, 592 (App. Div. 2024), who was not employed until she took an oath required for the position of Superior Court judge. The court also noted our Supreme Court in In re County of Atlantic, 230 N.J. 237, 244, 249 (2017), interpreted the "hire date" as the date on which the employee began work for the public entity.

Regarding previous exceptions granted to the resolution's temporal bar to no-cost lifetime health benefits, the court distinguished Graves's circumstances from plaintiff's because Graves belonged to a union, had relied on the promise of retirement health benefits in accepting employment, first worked for the MCPO on loan from a local police department with lifetime benefits, and ultimately entered into a settlement with the County allowing Graves benefits

predicated on "specific reasons associated with Graves's service with the County, which [we]re not applicable to [plaintiff]." The court was also "satisfied that the documents provided concerning the allowance of post-retirement medical benefits to four specific individuals d[id] not provide a basis for granting post-retirement medical benefits to [plaintiff]" as these four individuals had unique circumstances and "special expertise" and "[n]o evidence has been presented that an analogous situation exists for [plaintiff]."

Thus, the court concluded "[i]t [wa]s clear . . . the County considered an employee to have been 'hired' as of their first date of work," and the record did not support plaintiff's contention that an employee who accepted an offer, but did not start before the benefits cutoff date, was entitled to benefits. As such, the court dismissed plaintiff's complaint, determining "as a matter of law" and "as an issue of the intention of the [c]ounty of Monmouth in adopting the April 14, 1994 resolution," plaintiff "was not 'hired' until he actually began working at the MCPO on July 18, 1994."

Plaintiff then moved for reconsideration and recusal of the trial court. He largely reprised his earlier arguments but added claims that the trial court incorrectly equated the definition of "hire" with "start" and did not properly consider the documents he provided evidencing his onboarding process began

13

before the cutoff date. He argued the court overlooked evidence that other employees who also started after the cutoff date received benefits, and asserted the court should recuse itself based on its prior law firm's previous representation of the County and that firm's later hiring counsel who negotiated the Graves settlement. The court denied the motions finding no disputed facts, palpably incorrect reasoning, or overlooked evidence, and no basis for recusal, noting over fourteen years passed since it last represented the County.

Plaintiff now appeals and argues the court's grant of summary judgment in favor of defendants was improper. He contends the court "ignored material facts and exhibits" and "mistakenly interpreted and defined the operative word . . . , 'hired,'" and should have utilized the "common meaning" of the word, which was not otherwise defined in the regulation. Plaintiff also asserts defendants' denial of benefits was "an arbitrary and capricious decision," conceding he did not raise the issue before the trial court.

Plaintiff further argues the court erred in denying his discovery request for communications between Fitzgerald and O'Connor regarding the interpretation and application of the resolution's time bar to his situation, because these were "business" communications, not "legal" attorney-client

discussions.  Alternatively, he contends any privilege was waived, and the court "summarily den[ied]" his arguments without sufficient analysis.

At oral argument before us, plaintiff agreed July 18, 1994 was the trigger date for the commencement of salary and other benefits.  He further acknowledged his offer from the MCPO had several prerequisites, including a background check, and without that clearance he could not commence employment.  He admitted he was "free to walk away" before starting his employment, as was the MCPO particularly if the background check revealed concerning information.  He also conceded he did not raise the abuse of discretion argument before the trial court.

## II.

## A.

We review de novo summary judgment decisions, applying the same well-settled standard as the trial court.  Townsend v. Pierre, 221 N.J. 36, 59 (2015).  A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  "To decide whether a genuine issue of material fact

exists, . . . court[s] must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman, 242 N.J. at 472 (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). By contrast, motions for reconsideration under Rule 4:49-2 are reviewed with deference and disturbed only upon an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

All parties agree the pivotal issue for our consideration is whether plaintiff was "hired" before or after the effective date of the resolution's termination of previously provided lifetime no-cost health benefits upon retirement. Simply put, if deemed "hired" prior July 1, 1994, plaintiff is entitled to coverage. If hired after, he was not, and summary judgment was properly granted in favor of defendants.

We interpret county resolutions under the familiar rules of statutory interpretation and absent ambiguity "read [them] according to their plain meaning without addition or embellishment." Borough of Haledon v. Borough of N. Haledon, 358 N.J. Super. 289, 308 (App. Div. 2003). Only when the plain

16

language is "susceptible to different interpretations" will extrinsic evidence, such as legislative intent, be considered. Ibid. "Such extrinsic aids may also include definitions of the same words that appear in . . . dictionaries." Breitman v. Atlantis Yacht Club, 477 N.J. Super. 115, 121 (App. Div. 2023).

Resolution 94-267's language is clear and provides "any new employee hired after July 1, 1994 will not, regardless of their years of service anywhere, be allowed to retire from Monmouth County with any health benefits at no cost." Monmouth County, N.J., Bd. of Chosen Freeholders Res. 94-267 (Apr. 14, 1994). The resolution did not expressly define the meaning and temporal application of "hired" in this context, as evidenced by the parties' dispute, thus permitting consideration of extrinsic sources to determine the term's meaning. See ibid.; Borough of Haledon, 358 N.J. Super. at 308.

As did the trial court, we consult for reference relevant dictionary definitions. According to Black's Law Dictionary, the verb "hire" means "[t]o engage the labor or services of another for wages or other payment." Black's Law Dictionary 873 (12th ed. 2024). Thus, if someone is hired, that person has been engaged to provide labor or services for payment. Merriam-Webster's Dictionary similarly defines the verb "hire" as "engag[ing] the personal services of for a set sum" or "to get done for pay." Merriam-Webster's Collegiate

Dictionary 760 (12th ed. 2025). "Engage" is defined as meaning "[t]o employ or involve oneself; to take part in; to embark on." Black's Law Dictionary at 668. Merriam-Webster's Dictionary provides the following definitions for "engage": "to provide occupation for" or "involve"; "to arrange to obtain the use or services of" or "hire"; or "to do or take part in something." Merriam-Webster's Collegiate Dictionary at 542.

Notably, Merriam-Webster's Dictionary identifies as synonyms for "hire," "employ" and "employment." "Hire," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/hire, (last visited July 21, 2026). Black's Law Dictionary defines "employment" as "the quality, state or condition of being employed; the condition of having a paying job." Black's Law Dictionary at 663. Courts have long-recognized employed and employment to mean the actual performance of service for pay. See Zimmerman v. Bd. of Educ., 38 N.J. 65, 73-74 (1962) (recognizing employment began with the commencement of service); see also N.J.A.C. 17:2-2.4(a) (New Jersey's public employees are entitled to their retirement benefits "on the date of their regular appointments").

Critically here, we observe, as did the trial court, plaintiff was not employed and could not be employed in these circumstances until he passed a

18

background check and took an oath.  See Mayer, 479 N.J. Super. at 591 (noting the judgeship candidate "ha[d] not accepted the offer of employment" until she "t[ook] the judicial oath of office").  We also recognize plaintiff makes no claim he cleared the background check—a precondition of his employment—prior to July 1, 1994.  He asserts only that the process was "underway."  Further, plaintiff does not dispute he could have "walked away" without consequence at any time before taking his oath.

We are thus satisfied that in this context and under these circumstances, plaintiff, seeking a position as assistant county prosecutor that was materially conditioned on both completion of a mandatory background check as well as the administration of an official oath of office, could not be "hired" prior to the satisfactory completion of these preconditions.  His hiring was not a fait accompli upon his acceptance of a job offer.[5]  In this situation, the date on which plaintiff started was the date on which he was hired and the date on which his entitlement to benefits commenced.

---

[5]  As noted by the trial court, "The personnel file of an unclassified state employee must contain the date the employment offer was made to the employee and the date of hire.  N.J.S.A. 11A:3-4.1.  This implies that these are two different dates."

To conclude otherwise would run afoul of the County's intention in enacting Resolution 94-267—to save costs and terminate lifetime health benefits at the County's expense for new employees. A review of the meeting minutes from the Board's meeting concerning the resolution[6] reflects the then-county administrator advised the Board the intent of the resolution was to change the existing health benefits policy to "go . . . in a different direction" "to avoid costs that [we]re rising out of bound." See Minutes of Regular Public Meeting Before the Monmouth Cnty. Bd. of Chosen Freeholders 8-11 (Apr. 14, 1994). In discussions with the Board, the administrator confirmed the resolution's intent that "new employees, coming in as of July [1], w[ould] not be eligible to enroll in the indemnity program, and w[ould] not be eligible for paid health benefits in any program." Id. at 8 (emphasis added). We are convinced plaintiff was not a "new employee[] coming in as of July [1]," as he remained in the throes of a hiring process contingent on as-yet unfulfilled preconditions.

Moreover, as it is undisputed plaintiff was "hired" "effective July 18, 1994," the legal significance of an "effective" date merits review. Indeed, a

_____

[6] The record on appeal does not include the minutes of the Board's meeting concerning the resolution. Accordingly, pursuant to our request, the Monmouth County Clerk's Office, Archives Division, provided the legislative history of the resolution, including the meeting minutes.

"postponed . . . effective date provides clear evidence that [the enacting body] envisioned only prospective application." State ex rel. Hayling v. Corr'l Med. Servs., Inc., 422 N.J. Super. 363, 370 (App. Div. 2011). Merriam-Webster's Dictionary defines "effective date" as a noun, meaning "the day when a law, rule, contract, etc., starts to be used." "Effective date," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/effective%20date, (last visited July 21, 2026). Black's Law Dictionary defines "effective" as "in operation at a given time." Black's Law Dictionary at 650. Thus, we are satisfied plaintiff, aware of the effective date of his hiring, which was contemporaneous with his oath of office and the start of his paid employment, was not entitled to benefits predating July 18, 1994.

## B.

We next address plaintiff's claim, raised for the first time on appeal, that the County abused its discretion by arbitrarily and unreasonably denying him lifetime health benefits, citing the exceptions made by the County for allegedly similarly situated individuals. We "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem.

21

Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)); see also Zaman v. Felton, 219 N.J. 199, 226-27 (2014).

Here, plaintiff concedes he pled only a breach of contract claim, and did not challenge before the trial court defendants' denial of his health benefits on the basis of an abuse of discretion. We are satisfied we need not consider these arguments on appeal, but note for completeness the trial court addressed plaintiff's assertions concerning Graves and others who received benefits despite being hired after July 1, 1994, and found their situations distinct from plaintiff's.

Specifically, the trial court found the exceptions were predicated on the employee having "special circumstances" or "special expertise" or being otherwise "specific[ally] highly qualified individuals." The trial court noted, "No evidence has been presented that an analogous situation exists for [plaintiff]" and "[it wa]s satisfied that the documents provided concerning the allowance of post-retirement medical benefits to four specific individuals d[id] not provide a basis for granting post-retirement medical benefits to [plaintiff]." We perceive no basis to further address this newly-raised challenge on a record that fails to support plaintiff's claims or implicate a matter of public importance.

C.

Lastly, we address and reject plaintiff's argument the trial court erred in withholding as privileged communications between O'Connor and Fitzgerald concerning his benefits request. Although we generally review a trial court's evidentiary determinations under the deferential abuse of discretion standard, see Rodriguez v. Wal-Mart Stores, Inc., 237 N.J. 36, 57 (2019), issues pertaining to "the applicability of the attorney-client privilege" are reviewed de novo as an interpretation of law, see Hedden v. Kean University, 434 N.J. Super. 1, 10 (App. Div. 2013). "[C]ommunications between lawyers and clients in the course of that relationship and in professional confidence are privileged and therefore protected from disclosure." Ibid. (internal quotation marks omitted) (citing N.J.S.A. 2A:84A-20(1); N.J.R.E. 504(1)). Courts utilize a four-part test to determine the applicability of this privilege: "(1) [a communication] in which legal advice is sought, (2) from an attorney acting in his capacity as a legal advisor, (3) and the communication is made in confidence, (4) by the client." Ibid.

Plaintiff argues discussions between Fitzgerald and O'Connor are not privileged because they are "business" communications, not "legal" communications. Alternatively, plaintiff contends the privilege was waived by

O'Connor's email to him advising she was meeting with Fitzgerald on the issue and challenges the trial court's abbreviated analysis of his argument as having no legal citations. We are not persuaded.

Here, O'Connor, in her role as county administrator and on behalf of the County, sought legal advice from Fitzgerald, the County's attorney, regarding the County's legal obligations. Fitzgerald, in his capacity as county counsel, then privately and confidentially met with O'Connor before notifying plaintiff of the conclusion. Accordingly, we are satisfied any attorney-client discussions concerning plaintiff's benefits inquiry fall squarely within the scope of communications protected under the Hedden test. See ibid.

We perceive no merit to plaintiff's claim the privilege was waived because O'Connor shared with plaintiff her intent to speak to counsel regarding his eligibility or confirmed such discussion occurred. Revelation that a client consulted counsel does not remove the shroud of confidentiality from the content of the discussions or the advice given.

Further, we are convinced the court sufficiently articulated its reasons for denying plaintiff's motion. Rule 1.7-4(a) provides: "The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law . . . on every motion decided by a written order." In

24

rejecting plaintiff's claim of entitlement to Fitzgerald's communications, the trial court explained "he's the [C]ounty's attorney" and "[t]hose discussions absolutely are privileged" as "conversation[s] with their attorney." Although brief, we are satisfied the court's findings were sufficient. The court correctly found these communications were directed to and made by Fitzgerald in his capacity as county counsel and, as such, were privileged.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

A-3602-24